UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

---

SECURITIES AND EXCHANGE COMMISSION, :
100 F Street, N.E. :
Washington, D.C.   20549 :
                                Plaintiff, :
 :
                                v. :   Civil Action No. _____
 :
BERNARD J. DEMKO, :
 :
                                Defendant. :

---

## COMPLAINT

Plaintiff, the United States Securities and Exchange Commission, alleges as follows:

### SUMMARY

1. This is an action against defendant Bernard J. Demko for aiding and abetting violations of anti-fraud and other provisions of the federal securities laws in connection with the issuance of materially inaccurate financial information and the failure to maintain accurate books, records, and accounts by Gerber Scientific, Inc. ("Gerber" or "Company").

2. While Gerber was preparing its annual report on Form 10-K for fiscal year 2000, Demko, Gerber's corporate controller, learned that in the fourth quarter of fiscal year 2000, Gerber had failed to record $1.5 million of a $6.2 million decrease in the book value of the inventory of the Company's largest subsidiary, Gerber Scientific Products ("GSP"). Notwithstanding that Gerber had failed to record the $1.5 million, Gerber did

not correct its previously issued May 2000 press release in which it represented that it had taken a $6.2 million charge and in which its reported earnings reflected that it had taken the full amount of the charge. Gerber then filed its annual report on Form 10-K with materially inaccurate financial results and related disclosures.

3. Demko knew or was reckless in not knowing that, as a result of the failure to record the $1.5 million, Gerber's annual report on Form 10-K contained materially inaccurate financial results and related disclosures. Demko participated in, and helped implement, the decision to improperly amortize the $1.5 million over the four quarters of fiscal year 2001.

4. As a result of the failure to record the $1.5 million error, Gerber's financial statements filed with the Commission for fiscal year 2000, were materially misstated and not in conformity with generally accepted accounting principles ("GAAP"). As a result of his actions, Demko aided and abetted violations of anti-fraud, reporting, and record-keeping provisions of the Securities Exchange Act of 1934 ("Exchange Act"). Accordingly, the Commission seeks a final judgment (a) permanently enjoining Demko from violating Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5 and from aiding and abetting violations of Sections 13(a) and 13(b)(2)(A) of the Exchange Act and Exchange Act Rules 12b-20, 13a-1, 13a-13; (b) imposing a civil penalty; and (c) granting such other relief as the Court deems appropriate.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this action under Sections 21(d)(1), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d)(1), 78u(e), and 78aa]. Venue is proper under Section 27 of the Exchange Act [15 U.S.C. §§ 78aa] because certain of the acts, practices, and courses of business alleged in this Complaint occurred within this District.

## DEFENDANT

6.     Bernard Demko, age 47, was Gerber's corporate controller from May 1998 through November 2000, when he was named executive vice president and chief operating officer of Gerber Technology. In October 2002, he was named chief operating officer of the Company. In April 2005, he was named senior vice president of Gerber Scientific Operations. Demko was licensed as a certified public accountant in Connecticut for a period of time in 1982. He currently resides in South Windsor, Connecticut.

## RELEVANT ENTITY

7.     Gerber, a Connecticut corporation, is a provider of sign-making, specialty graphics, apparel and flexible materials, and optical lens processing goods and services, operating through several subsidiaries. At all relevant times, Gerber conducted its business primarily through four subsidiaries: GSP; Gerber Technology, Inc.; Gerber Coburn Optical, Inc.; and Spandex PLC. During that time, Gerber's fiscal year ended on April 30. Also during that time, Gerber's stock was registered with the Commission under Section 12(b) of the Exchange Act [15 U.S.C. § 78l(b)] and was traded on the New York Stock Exchange.

## FACTUAL ALLEGATIONS

**Failure to Record $1.5 Million of a $6.2 Million Charge for an Inventory Overstatement**

8. By late February 2000, Demko and other members of Gerber's senior management were aware that a substantial difference existed between the value of GSP's physical inventory and the value of its inventory as recorded on its books. As a result, Gerber senior management ordered an expanded annual review of GSP's physical inventory. In early April 2000, before the discrepancy between the physical and book inventory amounts had been resolved, GSP's finance officer abruptly, and without explanation, left the Company. Shortly thereafter, Gerber senior management engaged a special internal audit team, led by Demko, to determine the precise nature and amount of the inventory discrepancy.

9. By April 25, 2000, Demko informed Gerber's chief financial officer, Gary K. Bennett, that GSP's inventory was overstated by approximately $6 million.

10. On April 26, 2000, Gerber issued a press release disclosing that it would record a charge of approximately $6 million to write down the value of its inventory. The Company reported that the earnings impact of the charge would be $.17 per share and that, before any restructuring charges, it expected earnings for the fourth quarter of fiscal year 2000 to be reduced to $.08 to $.12 per share and earnings for the year to be reduced to $1.16 to $1.20 per share. Prior to the release, analyst expectations for Gerber had been $.42 per share for the fourth quarter and $1.50 per share for the year.

11. Following the issuance of the April 26, 2000, press release, Gerber's stock price dropped 25%, from a close of $15.44 on April 25, 2000, to a close of $11.50 on April 26, 2000.

12. By early May 2000, Demko informed Bennett and others that the amount of the inventory overstatement was $6.2 million as of March 25, 2000.

13. Shortly thereafter, employees responsible for recording the adjustment prepared a reconciliation of the difference between the value of the inventory recorded on Gerber's books and the results of the physical inventory. As a result of a clerical error, however, the reconciliation totaled only $4.7 million. On May 19, 2000, Company employees recorded the incorrect inventory adjustment. As a result of the error in the preparation of the reconciliation, the Company recorded a charge of only $4.7 million rather than $6.2 million, a difference of $1.5 million.

### The May 25, 2000, Press Release

14. On May 25, 2000, Gerber issued a press release announcing its results for the fourth quarter and year ended April 30, 2000, and announcing the amount of the charge for the inventory adjustment. The Company reported net earnings of $1.7 million, or $.08 per share, for the fourth quarter and net earnings of $25.9 million, or $1.16 per share, for the year. Gerber gave the inventory charge of $0.18 per share as one of two principal reasons why its earnings for the quarter were lower than the prior year's fourth quarter earnings.

15. Because Gerber had recorded only $4.7 million of the $6.2 million inventory charge, its financial results reported in the May 25, 2000, press release were materially inaccurate. Had Gerber recorded the entire $6.2 million charge, it would have had quarterly earnings of only $725,000, or $.04 per share, and annual earnings of only $24.9 million, or $1.12 per share – well below Gerber's April 26, 2000, earnings forecast range of $.08 to $.12 per share for the quarter and $1.16 to $1.20 for the year. Similarly

inaccurate was Gerber's statement that it had recorded a $6.2 million charge because, in fact, Gerber had only recorded $4.7 million of the full $6.2 million.

### Discovery and Concealment of the 1.5 Million Error

16.   In June 2000, over one month before Gerber filed its annual report on Form 10-K for fiscal year 2000, Gerber employees at GSP discovered the $1.5 million error in the inventory charge and informed Demko of the mistake.

17.   In late-June 2000, Demko and a member of GSP management informed Gerber's chief executive officer, Michael J. Cheshire, of the $1.5 million error, and Demko thereafter informed Bennett.

18.   In early July 2000, Bennett, Cheshire, and Demko discussed how to handle the $1.5 million error. The result of these discussions was that Gerber would amortize the error over the four quarters of fiscal year 2001, which is what the Company subsequently did.

19.   On July 27, 2000, Gerber filed its annual report on Form 10-K for fiscal year 2000. The Form 10-K included financial statements that reported the same results that the Company had reported in its May 25, 2000, press release. Those results did not include $1.5 million of the $6.2 million charge required to write down the value of GSP's inventory. Although the financial results included only $4.7 million of the charge, the Company, in footnotes to the financial statements and other disclosures in the Form 10-K, misrepresented that it had recorded the entire $6.2 million charge. As a result of the failure to record the $1.5 million, the Company's reported earnings for the fourth quarter were overstated by 100% and reported earnings for the year were overstated by 3.5%.

The misstatements in the Form 10-K resulting from the failure to record the $1.5 million were material.

20. When Gerber filed its Form 10-K, Demko knew or was reckless in not knowing that the Form 10-K contained the material misstatements described in paragraph 18 above.

21. In August 2000, Gerber began amortizing the $1.5 million error in equal installments over all four quarters of fiscal year 2001. Demko participated in, and helped implement the decision to amortize. Amortization of the error was inconsistent with GAAP. Demko knew or was reckless in not knowing that amortization was improper.

**Gerber's Restatement**

22. On August 27, 2002 Gerber filed its annual report on Form 10-K for its fiscal year ended April 30, 2002. In that Form 10-K, Gerber included restated financial statements for its fiscal years ended April 30, 2000, and April 30, 2001, and for the seven quarters ended January 31, 2002. The Company also restated its retained earnings as of April 30, 1999. Among other things, the Company included a restatement for its failure to record the $1.5 million in the fourth quarter of 2000.

**CLAIMS FOR RELIEF**

**FIRST CLAIM**

**Aiding and Abetting Violations of Section 10(b) of the Exchange Act and Exchange Act Rule 10b-5**

23. Paragraphs 1 through 22 are re-alleged and incorporated herein by reference.

24. Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5] prohibit persons from, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any

facility of any national securities exchange, and in connection with the purchase or sale of any security:

    a. Employing devices, schemes, or artifices to defraud;

    b. Making untrue statements of a material fact or omitting to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    c. Engaging in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon other persons.

25. As set forth more fully above, Gerber violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5] by knowingly or recklessly in issuing its annual report on Form 10-K for fiscal year 2000 with material misstatements resulting from the failure to record $1.5 million of the $6.2 million charge for the inventory overstatement

26. As set forth more fully above, Demko knowingly provided substantial assistance to Gerber in its violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

27. By engaging in the foregoing conduct, Demko aided and abetted Gerber's violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5].

## SECOND CLAIM

### Aiding and Abetting Violations of
### Section 13(a) of the Exchange Act and
### Exchange Act Rules 12b-20, 13a-1 and 13a-13

28. Paragraphs 1 through 22 are re-alleged and incorporated herein by reference.

29. Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Exchange Act Rules 12b-20, 13a-1, and 13a-13 require every issuer of registered securities to file annual and quarterly reports with the Commission that accurately reflect the issuer's financial performance and provide other true and accurate information to the public.

30. As set forth more fully above, Gerber violated Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Exchange Act Rules 12b-20, 13a-1, and 13a-13 [17 C.F.R. § 240.12b-20, 17 C.F.R. § 240.13a-1, and 17 C.F.R. § 240.13a-13] by filing with the Commission, for the periods from 2000 through 2001, annual and quarterly reports on Forms 10-K and 10-Q that contained financial statements that did not conform with GAAP and that contained other material misstatements resulting from the failure to record $1.5 million of the $6.2 million charge for the inventory overstatement.

31. As set forth more fully above, Demko knowingly provided substantial assistance to Gerber in its violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Exchange Act Rules 12b-20, 13a-1, and 13a-13 [17 C.F.R. § 240.12b-20, 17 C.F.R. § 240.13a-1, and 17 C.F.R. § 240.13a-13].

32. By engaging in the conduct described above, Demko aided and abetted Gerber's violations of Section 13(a) of the Exchange Act [15 U.S.C. § 78m(a)] and Exchange Act Rules 12b-20, 13a-1, and 13a-13 [17 C.F.R. § 240.12b-20, 17 C.F.R. § 240.13a-1, and 17 C.F.R. § 240.13a-13].

## THIRD CLAIM

### Aiding and Abetting Violation of
### Sections 13(b)(2)(A) of the Exchange Act

33. Paragraphs 1 through 22 are re-alleged and incorporated herein by reference.

34. Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)] requires each issuer of registered securities to make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflect the business of the issuer.

35. As set forth more fully above, Gerber violated Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)] by failing to record the $1.5 million of the $6.2 million inventory overstatement and thus failed to make and keep books, records, and accounts which, in reasonable detail, accurately and fairly reflected its transactions and dispositions of its assets.

36. As set forth more fully above, Demko knowingly provided substantial assistance to Gerber in its violation of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

37. By engaging in the conduct described above, Demko aided and abetted Gerber's violations of Section 13(b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter judgment:

a. permanently enjoining Demko, his agents, servants, employees, representatives, attorneys, affiliates and all persons in active concert or participation with

them who receive actual notice of the Court's judgment, from violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 [17 C.F.R. § 240.10b-5] and from aiding and abetting violations of Sections 13(a) and 13(b)(2)(A) of the Exchange Act [15 U.S.C. §§ 78m(a) and 78m(b)(2)(A)] and Exchange Act Rules 12b-20, 13a-1 and 13a-13 [17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-13);

b. imposing monetary penalties under Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; and

c. granting the Commission such further relief as the Court deems appropriate.

Respectfully submitted,

_Daniel A. Weinstein_

Scott W. Friestad
Laura B. Josephs (DC Bar Bo. 414519)
Donald N. Dowie
Thomas D. Silverstein (DC Bar No. 256362)
Daniel A. Weinstein

Attorneys for Plaintiff
Securities and Exchange Commission
100 F. Street, N.W.
Washington, D.C. 20549
Telephone: (202) 551-4501 (Weinstein)
Fax: (202) 772-9231

Dated: 7/26/05